[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3166
The plaintiff and the defendant were married on December 11, 1971 in Meriden, Connecticut. Both parties have resided in Connecticut continuously since that date. Two children were born of the union. The minor child, Erik Lee Gonzalez, was born December 18, 1978. He presently attends high school and resides with his mother in the family home, 74 Birchwood Road, South Meriden, Connecticut. The second child, Jennifer, is an adult, a college graduate with an advanced degree. She also resides with her mother and is employed as a teacher in the Meriden school system.
The plaintiff's husband left the family home at the request of the plaintiff on April 29, 1995. The plaintiff commenced this action on August 9, 1995, alleging that the marriage had broken down irretrievably. By way of relief, the plaintiff sought custody of the minor child, support for said child; alimony; exclusive possession of the family home; counsel fees, and an equitable division of the marital assets.
On September 28, the defendant filed an answer and cross complaint. The answer admitted the allegations in the complaint. The cross complaint alleged an irretrievable breakdown and requested joint custody of the minor son and an equitable division of the parties' marital property.
In December of 1995, the parties entered into a stipulation approved by the court establishing joint custody of the minor child with primary residence with the plaintiff subject to reasonable visitation with the defendant. The defendant was ordered to pay to the plaintiff the sum of $160 per week in child support and to maintain medical and dental insurance for the plaintiff and minor child as is available through his employment. The parties agreed to share equally any unreimbursed health expense for the minor child. This order incorporated the provisions of § 46b-84 of the General Statutes. It also required defendant to maintain a life insurance policy available through his employer, to pay the second mortgage on 74 Birchwood Road, to continue periodic payments to various health providers, to comply with a freeze order on assets under his control.
The order placed a freeze on assets under plaintiff's control, gave her exclusive possession of 74 Birchwood Road and CT Page 3167 the contents therein subject to her acknowledgment that all mechanic's tools and a lawn tractor were the sole property of the defendant. Plaintiff was ordered to pay the first mortgage on 74 Birchwood Road, together with the real estate taxes and homeowner's insurance on that property.
Defendant was permitted to retain the income from a jointly owned investment property, 389 Center Street, Meriden, Connecticut, but required to pay the mortgage, the taxes and the insurance on this property.
The agreement also provided the parties would share equally the cost of automobile insurance on various vehicles owned by them. The parties also agreed that they would file joint federal and state tax returns for income earned in calendar 1995.
In January 1996, the plaintiff filed a contempt motion representing that defendant had violated the exclusive possession order dated December 7, 1995, covering 74 Birchwood Road which granted exclusive possession to the plaintiff. The motion alleged defendant had appropriated certain appointment books and diaries and other personal belongings of plaintiff. This motion was not addressed by the court prior to the dissolution hearing on February 28, 1996.
The defendant filed an amended cross complaint on February 14, 1996. In this amended cross complaint the defendant complained, paragraph three, that on divers days during the marriage the plaintiff had committed adultery. The court heard testimony on February 28, 1996, February 29, 1996, and April 4, 1996, in support of the plaintiff's contention of irretrievable breakdown and the defendant's contention that the marriage broke down because of plaintiff's acts of adultery.
The evidence submitted by the parties and the witnesses they called enables the court to find as follows:
The plaintiff, Ramona Gonzalez, is 46 years of age, in good health, with a good work record. She graduated from high school in 1969 and immediately entered the work force. She continued to work during her marriage, sometimes full-time, sometimes part-time, as her homemaking and parental obligations permitted. She contributed her earnings to the family finances, in some instances borrowing funds from her family to assist her husband in the purchase of a family home. She was a principal caregiver CT Page 3168 to her two children but also participated in the management of the family finances. Plaintiff obtained a real estate license in 1979 and presently works fulltime in this field. She earned $18,000 in 1994, $26,000 in 1995, and about $5300 in the first quarter of 1996. Some of the earnings were contributed to family finances.
For the most part the marriage has been stable and prosperous. The husband is a hardworking man capable on occasion of working two jobs; he has devoted his resources to the family needs and to savings. In 1978 the plaintiff found lipstick on his collar, but after a brief argument, the incident was overlooked. Tension in the marriage developed over the years but particularly after the birth of Erik. Erik Lee Gonzalez was born in 1978. Initially, he developed without any unusual problems, but his progress after he entered school was uncertain. After he finished grammar school, he could not accommodate himself to a normal classroom setting and required special education facilities. At home he became resentful, belligerent, resistant to authority and discipline. He challenged his father, provoked his sister and mother. In September of 1994, the defendant and Erik were involved in a scuffle. The mother called the police after the defendant punched Erik. Both Erik and his father were arrested. Plaintiff concluded at that time that defendant's volatile temper had gotten out of control. The tension which continued between the father and son affected the plaintiff who was finding less and less satisfaction in the marriage.
In 1990 the parties; daughter entered college. Defendant assisted with tuition for the first year but refused to assist financially thereafter to the dismay of the plaintiff. Defendant's temperament caused friction with the daughter as well as the son, he was overprotective and accusatory toward her and on occasion physical. In June of 1991, after finding his daughter in an act of disobedience, he struck her, knocking her to the floor. This incident increased plaintiff's dissatisfaction with her husband.
An earlier incident had occurred which put a long-lasting strain on the marriage. In 1983 the plaintiff had discovered a letter at that time written by her husband to her niece, a minor. In this letter, defendant encouraged the minor female to enter a sexual liaison with him. This discovery promoted a suspicion in the plaintiff that defendant's attitude toward his daughter was not entirely benign. The defendant vehemently disputed any such CT Page 3169 inference and after considering all of the testimony, the court finds that the plaintiff's suspicion was probably unfounded.
Guillermo Gonzalez is presently 48 years of age, in reasonably good health. He is a high school graduate with a consistent record of employment and is presently living in a flat which he rehabilitated in the attic of a two-family income property owned by the parties. He receives income from this property which has negative equity inasmuch as the mortgage exceeds the market value. The funds used in restoring this dwelling unit originated in part from the parties' savings. Mr. Gonzalez is presently employed as a machinist at Pratt Whitney and has been so employed since the mid-70s. In 1994 his W-2 wage and tax statement indicated wages of $48,061.77. In 1995, these wages were $43,843.69. During the course of this twenty-four-year marriage, his earnings have constituted the major contribution of the parties in the acquisition, preservation and appreciation in value of the estates of the parties.
The defendant rests his claims of adultery against the plaintiff on two separate theories. In 1981, he accused his wife of a single adulterous incident. Plaintiff absolutely denies that any adultery took place on that occasion, and her denial is entirely credible. In 1994, Erik Gonzalez apparently got somewhat involved in drugs. The family requested assistance from a police officer, one Juan Navarro. Officer Navarro had numerous contacts with Erik and the family as a result of Erik's behavior. The officer was also involved in the incident in 1994 when the plaintiff called the police after the defendant and Erik had a fistfight. Mrs. Gonzalez came to rely upon him and had numerous contacts with him after September 1994 when the fight occurred.
Mr. Gonzalez came into possession of his wife's diary and her appointment books sometime after Judge Silbert's order of exclusive possession dated December 6, 1995, regarding Mrs. Gonzalez' residence, 74 Birchwood Road. Defendant offered various cryptic entries from these documents as proof of adulterous behavior on his wife's part with Juan Navarro. Defendant subpoenaed Navarro who testified and vehemently denied such behavior as did the plaintiff. The court finds that Ramona Gonzalez and Officer Navarro did develop a close friendship. However, the defendant did not prove this friendship was adulterous by the fair preponderance of the evidence.
On the basis of all the evidence, the court concludes that CT Page 3170 the marriage broke down primarily because of the tension resulting from the husband's inability to control his temper in the governance of his son and daughter together with his reluctance to finance his daughter's education beyond the freshman year. To some extent, the defendant's domineering attitude was a contributory factor in the breakdown of this marriage.
The court finds that the plaintiff has proved the allegations of her complaint, and the defendant has failed to prove the allegations of his cross complaint, dated February 12, 1996. Accordingly, the court dissolves the marriage on the basis of irretrievable breakdown. Sole custody of Erik Lee Gonzalez is given to the plaintiff subject to reasonable visitation rights of the defendant. Defendant shall pay support to plaintiff for the maintenance of Erik in the amount of $140 weekly. Support shall continue as provided in General Statutes § 46b-84(b). Support payments shall be made by way of an immediate wage execution. The defendant shall maintain medical insurance for the benefit of the minor child as available through his employment. Plaintiff and defendant shall divide equally and be equally responsible for the uninsured, unreimbursed health expenses of the minor child. The plaintiff is given the right to claim a federal income tax exemption for the minor child.
The court finds that the fair market value of the jointly owned family residence known as 74 Birchwood Road is $100,000, subject to first and second mortgage totalling approximately $33,000. The defendant is ordered to quitclaim this property to plaintiff who will hold the defendant harmless as to these mortgage obligations. The plaintiff is ordered to quitclaim to the defendant property known as 389 Center Street, Meriden, Connecticut. The defendant will hold the plaintiff harmless as to all mortgage obligations on this property. The plaintiff may retain her jewelry and all furniture and fixtures contained in 74 Birchwood Road, Meriden, Connecticut, with the exception of the lawn tractor and the mechanic's tools which shall be the property of defendant. The plaintiff is given sole ownership of a 1968 Camaro, a 1995 Nissan Altima, and the plaintiff will hold the defendant harmless from obligation to repay any loans against these vehicles.
The defendant is given sole ownership of a 1986 Taurus automobile, a 1987 Nissan pickup truck, a 1968 Mustang, and a 1994 Talon. The plaintiff will execute all documents necessary to CT Page 3171 perfect the title to these vehicles in defendant. Defendant will indemnify and hold the plaintiff harmless from any obligation to repay any loans encumbering any of these vehicles. The defendant will return to plaintiff one working computer including CPU monitor, keyboard and mouse. The plaintiff will return to defendant a monitor and a Spanish keyboard.
Each party will keep as their sole property the bank accounts in their respective names. Each party will keep the IRAs in their names as their sole property. Defendant shall execute all the necessary documents to convey to the plaintiff all his right, title and interest in and to the Treetop Timeshare Condominium. The defendant may retain as his sole property all of the savings bonds he has obtained through the payroll deduction plan at his place of employment, the United Aircraft's Division of United Technologies. The defendant is given the exclusive ownership of 212.13 shares of Northeast Utility stock. The plaintiff will endorse over to the defendant all of her right, title and interest in and to an insurance check in the amount of $6,789, representing an insurance payment for damage to a 1986 Taurus automobile.
No attorney's fees are awarded to either party. The defendant is found to be responsible for the following bills as found on the parties' financial affidavits for services to his son, Erik Lee Gonzalez: 1) Mt. Sinai Hospital; 2) Yale Psychiatric Institute; 3) John Conroy, M.D.; 4) Veterans Memorial Medical Center; 5) Dr. Charney. The defendant is ordered to pay these bills in a timely fashion. The defendant is found to be solely responsible for an outstanding bill to the East Hartford Federal Credit Union for Visa charges and for a loan outstanding to the Co-op Savings of Puerto Rico, estimated in the amount of $5000. The defendant shall pay these obligations in a timely fashion and hold the plaintiff harmless from all obligations of repayment on these debts.
Plaintiff is solely responsible for a debt to the American Express Company and for the obligation on Visa Gold found on her financial affidavit. She shall pay these debts in a timely fashion and hold the defendant harmless from any obligation to pay these debts.
Defendant and plaintiff shall be jointly responsible for and each pay half of the following debts: 1) Chase Visa, approximately $2,477; 2) Chase Mastercard, approximately $1500; CT Page 3172 3) GL-SI student loan, approximately $1,973; 4) GL-SI student loan, approximately $2,383; 5) Salve Regina student loan, approximately $2,367; 6) Salve Regina Pell loan, approximately $65; 7) Sally Mae student loan, approximately $4000.
The court finds a continuing support obligation on the part of the defendant and therefore the defendant shall pay periodic alimony to the plaintiff for a period of five years. In making this award of alimony, the court has given consideration to the elements contained in § 46b-82 of the General Statutes, particularly the length of the marriage. The term of this periodic alimony is nonmodifiable. Defendant will pay to the plaintiff the sum of $1 per year until such time as his support obligation to his son, Erik Lee Gonzalez, terminates. When the defendant's support obligation as defined by § 46b-84 of the General Statutes terminates, the defendant shall pay to the plaintiff the sum of $50 per week for a period of four consecutive years. This obligation will terminate upon the death or remarriage of the plaintiff. The periodic payments of alimony shall be made by a wage execution.
After considering the elements contained in § 46b-81, assignment of property and transfer of title, the court assigns to the plaintiff 50 percent of the present value of the pension benefit which the defendant is entitled to receive from the United Aircraft Division of the United Technology Corporation. The court finds that the present value of the accrued benefit to the defendant is $23,235 and that the defendant is entitled to receive an accrued benefit of $602.72 per month commencing at age 65. The court orders the defendant to submit a Qualified Domestic Relations Order to the court for its execution authorizing and recognizing the right of the plaintiff to receive a monthly benefit payment at the same time and in the same manner as payments are made to the plaintiff based upon the present value of the accrued benefit of $23,235. All payments are to be made from the pension plan vested in the defendant due from the United Aircraft Corporation, a division of the United Technologies Corporation. The defendant shall pay to the plaintiff lump sum of alimony of $10,000 within sixty days from the date of this judgment.
Dorsey, J. State Trial Referee CT Page 3173